O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| PARAMOUNT PICTURES CORP.; PARAMOUNT HOME ENTERTAINMENT DISTRIBUTION, INC.; PARAMOUNT HOME ENTERTAINMENT, INC., <br><br>    Plaintiffs/Counter-Defendants, <br><br>    v. <br><br> NISSIM CORP., <br><br>    Defendant/Counterclaimant. | Case № 2:14-cv-04624-ODW(ASx)-** <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER FOR LACK OF PERSONAL JURISDICTION [22]** |
| TWENTIETH CENTURY FOX HOME ENTERTAINMENT, LLC; METRO-GOLDWYN MAYER STUDIOS, INC.; METRO-GOLDWYN MAYER HOME ENTERTAINMENT, LLC, <br><br>    Plaintiffs/Counter-Defendants, <br><br>    v. <br><br> NISSIM CORP., <br><br>    Defendant/Counterclaimant. | Case № 2:14-cv-04626-ODW(ASx) <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER FOR LACK OF PERSONAL JURISDICTION [16]** |

| | |
|---|---|
| UNIVERSAL CITY STUDIOS, LLC; UNIVERSAL STUDIOS HOME ENTERTAINMENT, LLC,<br><br>    Plaintiffs/Counter-Defendants,<br><br>    v.<br><br>NISSIM CORP.,<br><br>    Defendant/Counterclaimant. | Case № 2:14-cv-04628-ODW(ASx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER FOR LACK OF PERSONAL JURISDICTION [23]** |

## I. INTRODUCTION

Before the Court are three identical Motions to Transfer for Lack of Personal Jurisdiction in three related declaratory judgment actions. (*Paramount Pictures Corp. v. Nissim Corp.*, No. 2:14-cv-04624-ODW ("*Paramount* Action"), ECF No. 22; *Twentieth Century Fox Home Entm't, LLC v. Nissim Corp.*, No. 2:14-04626-ODW ("*Fox* Action"), ECF No. 16; *Universal City Studios, LLC v. Nissim Corp.*, No. 2:14-cv-04628-ODW ("*Universal* Action"), ECF No. 23.) All three cases involve the same eleven patents relating to video-playback technologies essential to DVD and Blu-ray disc products. The Studio Plaintiffs[1] seek declaratory judgment of non-infringement against the patentee—Defendant Nissim Corp. However, Nissim—a Florida corporation with its principal place of business in Florida—challenges this Court's jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and seeks transfer of these actions to the Southern District of Florida. For the reasons discussed below, the Court **GRANTS** Defendant's Motions to Transfer For Lack of Personal Jurisdiction.[2]

/ / /

/ / /

---

[1] Plaintiffs in the *Paramount* Action are Paramount Pictures Corp.; Paramount Home Entertainment Distribution, Inc.; and Paramount Home Entertainment, Inc. Plaintiffs in the *Fox* Action are Twentieth Century Fox Home Entertainment, LLC; Metro-Goldwyn Mayer Studios, Inc.; and Metro-Goldwyn Mayer Home Entertainment, LLC. Plaintiffs in the *Universal* Action are Universal City Studios, LLC and Universal Home Entertainment, LLC. These parties are referred to collectively as "the Studio Plaintiffs" throughout this Order.

[2] Having considered the papers filed in support of and in opposition to the Motions, the Court deems the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL BACKGROUND

The Studio Plaintiffs initiated these patent declaratory judgment actions on June 16, 2014. (ECF No. 1.)[3] They seek declaratory judgment of non-infringement on a total of eleven patents owned by Nissim—U.S. Patent Nos. 7,054,547; 6,463,207; 6,304,715; 6,208,805; 6,151,444; 6,002,833; 5,987,211; 5,913,013; 5,724,472; 5,589,945; and 5,434,678. (*Id.*; Abecassis Decl. ¶ 5.) Nissim is a Florida-based company that owns a portfolio of patents in the field of video-playback technology. (Abecassis Decl. ¶¶ 4–5.) Max Abecassis is the sole owner, officer, and employee of Nissim. (*Id.* ¶ 1.)

The patents-in-suit describe and claim video-playback technologies essential to DVD and Blu-ray disc products. (Abecassis Decl. ¶ 6.) These technologies include seamless branching, by which multiple versions of a single movie can be stored on a single disc, and user operations control, by which a viewer's ability to navigate past a video segment like an FBI warning can be disabled. (*Id.*) All of the patents-in-suit are now expired. (*Id.* ¶ 13.)

Nissim filed the present Motions to Transfer for Lack of Personal Jurisdiction, or in the Alternative Dismiss, on August 8, 2014. The Motions are based on identical grounds in all three cases, and the Studio Plaintiffs filed a single Opposition. Nissim subsequently filed Answers and Counterclaims in the three actions, later amending those pleadings as permitted under Federal Rule of Civil Procedure 15.[4] After filing its compulsory counterclaims—for infringement of the eleven patents-in-suit—Nissim withdrew its alternative request to dismiss the actions in order to preserve available damages. (*E.g.*, ECF No. 45.)

---

[3] As the low-number case, the Court refers to the docket in the *Paramount* Action throughout the Order unless specified otherwise. The Complaints as well as the present Motions and Oppositions are nearly identical, so for the sake of judicial economy and ease of reading, the Court distinguishes the actions only where necessary.

[4] Rule 12(h)(1) does not prohibit filing an answer before a court rules on a 12(b) motion. *See also Rates Tech., Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1308 (Fed. Cir. 2005) ("We hold that filing a counterclaim, compulsory or permissive, cannot waive a party's objections to personal jurisdiction, so long as the requirements of Rule 12(h)(1) are satisfied.")

Relevant to the instant Motions is Nissim's licensing history with the patents-in-suit. In the mid-to-late 1990s, a consortium of major consumer-electronics manufacturers, the "DVD Consortium," adopted technical specifications known as the "DVD Specifications" to ensure interoperability of DVD players and DVDs. (Abecassis Decl. ¶ 8.) According to Abecassis, the DVD Specifications utilized Nissim's patented technology, so Nissim implemented a licensing program with the manufacturers in the DVD Consortium. (*Id.* ¶¶ 9–10.) Nissim entered into approximately 100 licensing agreements with these manufacturers, which included all of the DVD Consortium except for Time Warner. (*Id.*) Time Warner is the parent company of Warner Bros.—a movie studio that makes discs but not disc players. (*Id.* ¶ 10.) Nissim's licenses at that time were only with DVD-playback device manufacturers.

After unsuccessful licensing negotiations, Nissim filed a patent-infringement suit against Time Warner and its Warner Bros. movie-studio subsidiaries. (Abecassis Decl. ¶ 10.) The suit was filed in the Southern District of Florida on March 8, 2007, and involved the same patents at issue in this action. *See Nissim Corp. v. Time Warner, Inc.*, No. 1:07-20624 (S.D. Fla. filed Mar. 8, 2007). Time Warner successfully moved to transfer the case from Florida to the Central District of California. *See Nissim Corp. v. Time Warner, Inc.*, No. 2:08-cv-00742-GAF(MANx) (C.D. Cal. transferred Feb. 4, 2008). Throughout the litigation, Nissim sought transfer back to Florida, appealing the issue to the Federal Circuit and petitioning the Supreme Court. *Id.* The *Time Warner* Action ultimately settled on May 7, 2013.[5] (*Time Warner* Action, ECF No. 203.)

On November 6, 2013, Nissim sent infringement letters to the Studio Plaintiffs in California, offering licensing terms for their allegedly infringing DVDs and Blu-ray

---

[5] While it took six years to resolve the litigation in the *Time Warner* Action, it is worth noting that the case was actually stayed for a significant amount of time pending reexamination of the patents in the U.S. Patent and Trademark Office. (*Time Warner* Action, ECF No. 57.) The case settled about five months before the conclusion of the final reexamination. (Abecassis Decl. ¶ 11.)

discs. (Abecassis Decl. ¶ 12; Basset Decl. ¶ 4, Ex. D; Hairston Decl. ¶ 3, Ex. C; Alexander Decl. ¶ 4, Ex. D; Mares Decl. ¶ 2, Ex. A.) The parties were negotiating terms at the time the Studio Plaintiffs filed suit. (Abecassis Decl. ¶ 12.) As part of the negotiations, Nissim and the Studio Plaintiffs entered into nondisclosure agreements regarding the license agreement between Nissim and Warner Bros. that resulted from the settlement in the *Time Warner* Action. (Bassett Decl. ¶ 5, Ex. E; Mares Decl. ¶ 4, Ex. C; Alexander Decl. ¶ 5, Ex. E.) The nondisclosure agreements included California choice-of-forum clauses. (*Id.*)

Nissim has no office and no employees outside of Florida. (Abecassis Decl. ¶ 14.) From the late 1990s through the expiration of the patents-in-suit, Nissim has granted licenses to the patents-in-suit to approximately 100 companies worldwide, including at least 20 California companies. (Abecassis ¶ 9; Lee Decl. ¶ 2, Exs. A–B.) All of the licenses are nonexclusive. (Abecassis ¶ 17.) Nissim does not market or advertise in California, nor has it ever sold products or services in California. (*Id.* ¶ 15.) Another company solely owned by Abecassis—CustomPlay—has solicited business in California, marketing and selling video-playback products. (Abecassis Decl. ¶¶ 19–22.) But while Nissim and CustomPlay were once parent and subsidiary, Nissim divested its ownership in CustomPlay in 2011 and the companies are now separate and independent. (*Id.*)

### III. LEGAL STANDARD

Federal Circuit law governs personal-jurisdiction determinations where "the jurisdictional issue is 'intimately involved with the substance of the patent laws.'" *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008) (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995)). Moreover, as in these cases, where a district court acts on a Rule 12(b)(2) motion without holding an evidentiary hearing, the plaintiff need only make a prima facie showing that the defendant is subject to personal jurisdiction. *Id.* at 1328–29. As such, the pleadings and affidavits are construed in the light most favorable to the plaintiff. *Id.* at 1329.

"Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001). "However, because California's long-arm statute is coextensive with the limits of due process, these two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Id.* at 1360; *see also* Cal. Civ. Proc. Code § 410.10.

Due process requires that a defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). Using the "minimum contacts" analysis, a court may obtain either general or specific jurisdiction over a non-resident defendant. *See Avocent*, 552 F.3d at 1330. A court has general jurisdiction where the defendant's contacts with the forum state are "continuous and systematic." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (2008)). Specific jurisdiction exists where the defendant has "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (internal quotations and citations omitted). Once "minimum contacts" have been established, the contacts may be considered in light of other factors to decide if the exercise of personal jurisdiction comports with "fair play and substantial justice."[6] *Id.* at 476.

/ / /

---

[6] Relevant factors include:
> [1] the burden on the defendant, [2] the forum State's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [5] the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* at 477.

With respect to specific jurisdiction, the Federal Circuit employs a three-prong test to determine whether,

> (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. With respect to the last prong, the burden of proof is on the defendant, which must 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' under the five-factor test articulated by the Supreme Court in *Burger King*.

*Breckenridge Pharms., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006) (quoting *Burger King*, 471 U.S. at 476–77). The first two prongs correspond with the "minimum contacts" requirement of *International Shoe*, while the third prong corresponds to the "fair play and substantial justice" part of the analysis. *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

## IV.  DISCUSSION

Nissim argues that the Court lacks personal jurisdiction because the infringement letters sent to the Studio Plaintiffs in California are insufficient to meet the minimum contacts requirement for specific personal jurisdiction. Moreover, while the Studio Plaintiffs make reference to other conduct directed at California, the Studio Plaintiffs' claims do not arise out of or relate to that conduct. Nissim also argues that its limited contacts with California are not continuous and systematic for the purposes of general jurisdiction. On the other hand, the Studio Plaintiffs contend that Nissim's contacts with California are sufficient to meet the due process requirements of personal jurisdiction.

Having considered all of Nissim's contacts with California and Federal Circuit precedent in patent declaratory judgment actions, the Court finds that it lacks personal jurisdiction over Nissim for the reasons discussed below.

/ / /

### A. Infringement Letters

In the context of declaratory judgment actions, the claims asserted by the plaintiff must "arise[] out of or relate[] to the activities of the defendant patentee in enforcing the patents in suit." *Avocent*, 552 F.3d at 1332. But the Federal Circuit has made clear that infringement letters or letters seeking to license the patents-in-suit cannot alone support a finding of specific jurisdiction, even if the letters are directed at the forum state and the litigation arises out of the letters. *Id.*; *see also Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360–61 (Fed. Cir. 1998) ("Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum simply by informing a party who happens to be located there of suspected infringement.").

Thus, while these declaratory judgment actions certainly arise out of the letters sent by Nissim to the Studio Plaintiffs in California, the letters alone do not meet the minimum contacts requirement. Rather, the Federal Circuit has explained that due process also requires "other activities" directed at the forum "that relate to the *enforcement* or the *defense of the validity* of the relevant patents." *Avocent*, 552 F.3d at 1334; *see also Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003).

### B. Other Activities

In defining "other activities", the Federal Circuit has offered examples, which include "initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations upon a party residing or regularly doing business in the forum." *Avocent*, 552, F.2d at 1334. These "other activities" do not have to be directed at the plaintiff in the forum state, but they must "in some identifiable way 'relate to' enforcement of [the patents-in-suit] in the forum." *Id.* at 1334.

The parties' arguments in the Motions have focused on the "other activities" inquiry. The Studio Plaintiffs contend that the *Time Warner* Action, the choice-of-forum clauses in the nondisclosure agreements, Nissim's licenses with other California companies, and CustomPlay's activities here all bolster the minimum contacts necessary for exercise of personal jurisdiction over Nissim. On the other hand, Nissim argues that these contacts are either expressly excluded from the "other activities" inquiry or cannot be attributed to Nissim.

### 1. The *Time Warner* Action

According to the Studio Plaintiffs, Nissim's decision to continue prosecuting the *Time Warner* Action after it was transferred to California confers personal jurisdiction over Nissim in California. (Opp'n 11:2–12:2.) However, Nissim argues that it did not voluntarily litigate the *Time Warner* Action in California since it was transferred from the Southern District of Florida; thus, there was no purposeful availment in California. (Mot. 7:1–9:4; 15:20–24.)

The Court finds that the present actions brought by the Studio Plaintiffs do not arise out of the *Time Warner* Action. The Studio Plaintiffs' claims arise out of the infringement letters sent by Nissim. *See Avocent*, 552 F.3d at 1333 ("In many patent declaratory judgment actions, the alleged injury arises out of the threat of infringement as communicated in an 'infringement letter' . . . .")

Moreover, the Court also finds that the *Time Warner* Action cannot be considered an "other activity" because Nissim had no choice but to litigate in California after the case was transferred. While patent-enforcement suits—like the *Time Warner* Action—qualify as "other activities" in the minimum contacts analysis, the patent-enforcement suit must be initiated in the forum state. *Id.* at 1334. Here, Nissim initiated the *Time Warner* Action in Florida, not California. Therefore, Nissim did not "*purposefully* avail[] itself of the privilege of conducting activities within the forum state." *Hanson v. Denckla*, 357 U.S. 235, 254 (1958) (emphasis added); *see also Burger King*, 471 U.S. at 475.

1    The fact that Nissim continued to litigate the *Time Warner* Action after it was
2 transferred to California does not somehow make Nissim's contacts voluntary or
3 purposeful. Nissim objected to the transfer and appealed the decision. Once
4 transferred to California, Nissim was left with no choice but to litigate here or lose its
5 claims against the defendants in the *Time Warner* Action. "Filing a suit in one's home
6 forum cannot, of itself, create minimum contacts with the forum one wishes to avoid,
7 merely because the court concludes the home forum is inappropriate." *Koresko v.*
8 *Crosswhite*, No. 05-CV-4817, 2006 WL 263623, at *5 (E.D. Pa. Feb. 1, 2006)
9 (rejecting personal jurisdiction over defendants in Pennsylvania where defendants
10 previously filed a related suit in Oregon that was transferred to Pennsylvania). *But see*
11 *Kyocera Commc'ns, Inc. v. Potter Techs., LLC*, No. 13-cv-0766-H(BGS), 2013 WL
12 2456032, at *3 (S.D. Cal. June 5, 2013) (denying a motion to dismiss for lack of
13 personal jurisdiction based *in part* on the fact that the defendant continued to litigate a
14 case involving the same patent after the case was transferred from Colorado to
15 California). The Court finds that consideration of the *Time Warner* Action to
16 establish minimum contacts in California would upend the Supreme Court's
17 requirement that a non-resident defendant's conduct be voluntary and purposefully
18 directed at the forum state. *See Juniper Networks, Inc. v. SSL Servs., LLC*, No. C 08-
19 5758 SBA, 2009 WL 3837266, at *4 (N.D. Cal. Nov. 16, 2009) (finding that the court
20 lacked personal jurisdiction in a patent declaratory judgment action where the patent
21 owner previously sued a California company on the same patents in Texas).

22   For these reasons, the Court gives no weight to the litigation of the *Time*
23 *Warner* Action in California in its jurisdictional analysis.

24   **2.   Nondisclosure Agreements**

25   The Studio Plaintiffs also contend that the nondisclosure agreements entered
26 into with Nissim establish minimum contacts with California because the agreements
27 contain California choice-of-forum provisions. (Opp'n 12:14–13:9.) But the Studio
28 Plaintiffs claims do not arise out of these nondisclosure agreements since they pertain

to the license entered into between Nissim and Warner Bros. as a result of the *Time Warner* Action settlement. (Bassett Decl. ¶ 5, Ex. E; Mares Decl. ¶ 4, Ex. C; Alexander Decl. ¶ 5, Ex. E.)

The Court is also not convinced that the nondisclosure agreements, with their California choice-of-forum clauses, fit into the category of "other activities" that help establish minimum contacts in conjunction with the infringement letters. While there is no question that choice-of-law and choice-of-forum provisions should be considered in assessing whether a party has purposefully availed itself of the forum state, the plaintiff's claims must still arise out of or relate to those provisions. *See Burger King*, 471 U.S. 481–82 (holding that choice-of-law provisions should be considered in assessing personal jurisdiction); *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1353 (Fed. Cir. 2003) (describing a choice-of-forum clause as having "dispositive weight" in the personal jurisdiction analysis). But in the cases here, the nondisclosure agreements concerned disclosure of the settlement terms in the *Time Warner* Action and resulting licenses, not the Studio Plaintiffs' allegedly infringing activities or the validity of the patents-in-suit.

Even with a more permissive view of the "relates to" requirement when it comes to the "other activities" that help establish minimum contacts, the Federal Circuit has held that a forum-selection clause does not convey personal jurisdiction over a defendant unless the plaintiff's claims arise out of the agreement containing the clause. *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 793 (Fed. Cir. 2011) ("Because this action did not arise out of the subject matter of the confidential disclosure agreement, the forum selection clause of that agreement has no effect on the question of personal jurisdiction.") Accordingly, the Court finds that the California choice-of-forum provisions in the nondisclosure agreements do not help establish minimum contacts for the purposes of personal jurisdiction.

/ / /

/ / /

### 3. Infringement Letters and Licenses to Other California Companies

Next, the Court considers the infringement letters sent by Nissim to other California companies as well as the license agreements entered into with those companies. Nissim argues that the infringement letters sent to other California companies fail to establish personal jurisdiction for the same reason that the letters sent to the Studio Plaintiffs fail to support a finding of minimum contacts. (Mot. 18:2–19:5.) Also, Nissim contends that the licenses to other California companies are not "other activities" as defined by the Federal Circuit because the licenses were nonexclusive. (*Id.* at 20:5–28.) On the other hand, the Studio Plaintiffs argue that Nissim's contacts with other California contacts support personal jurisdiction by distinguishing their claims from other declaratory judgment actions where courts found they lacked personal jurisdiction over the defendants. (Opp'n 9:11–10:22.)

The Federal Circuit has repeatedly held that cease-and-desist letters and nonexclusive licenses with companies located in the forum state do not support a finding of personal jurisdiction.

> [T]he crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease-and-desist letters or mere attempts to license the patent at issue there. . . . [O]ur case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities.

*Breckenridge*, 444 F.3d at 1366; *see also Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021 (Fed. Cir. 2009) (affirming dismissal for lack of personal jurisdiction where licenses to companies doing business in the forum were nonexclusive); *Avocent*, 522 F.3d at 1335 (holding that, unlike an exclusive license

agreement with a non-party resident of the forum state, a nonexclusive license agreement does not confer personal jurisdiction); *Red Wing Shoe*, 148 F.3d at 1362 (distinguishing between exclusive license agreements and nonexclusive license agreements in assessing personal jurisdiction over a defendant in a declaratory judgment suit).

Here, while Nissim has entered into license agreements for the patents-in-suit with 20 companies in California, all of these license agreements are nonexclusive. (Abecassis ¶ 17.) Accordingly, the Court finds these letters and nonexclusive licenses inadequate in considering "other activities" to support minimum contacts.

### 4. CustomPlay's Activities

The Studio Plaintiffs also attempt to attribute CustomPlay's activities in California to Nissim, arguing that CustomPlay's contacts should be considered "other activities." (Opp'n 15:2–11.) CustomPlay markets and distributes products covered by the patents-in-suit.

But the Studio Plaintiffs' arguments with respect to CustomPlay fall short for a number of reasons. First, the cases here do not arise out of or even relate to CustomPlay's activities, and cannot be considered "other activities" as defined by the Federal Circuit. *See Avocent*, 552 F.3d at 1336 ("A defendant patentee's mere acts of making, using, offering to sell, selling, or importing products—whether covered by the relevant patent(s) or not—do not, in the jurisdictional sense relate in any material way to the patent right that is at the center of any declaratory judgment claim . . . . [S]uch sales do not constitute such 'other activities' as will support a claim of specific personal jurisdiction . . . .").

Moreover, as Nissim points out, even though Abecassis owns both CustomPlay and Nissim, they are separate business entities. (Abecassis Decl. ¶¶ 19–22.) Thus, Nissim cannot be held accountable for CustomPlay's activities in California. In addition, while Nissim and CustomPlay were parent and subsidiary until 2011, CustomPlay's activities in California during that relationship cannot be imputed to

Nissim for the purposes of personal jurisdiction. *See, e.g.*, *KGM Indus. Co. v. Harel*, No. 12-cv-03209-DDP(JEMx), 2012 WL 5363328, at *2 (C.D. Cal. Oct. 30, 2012) (finding that the court lacked personal jurisdiction in a patent case because "the mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law").

For these reasons, the Court gives no weight to CustomPlay's activities in its jurisdictional analysis.

### 5. Aggregate Contacts

The Studio Plaintiffs also argue that Nissim's contacts with California in the aggregate suffice to establish specific personal jurisdiction. (Opp'n 13:12–15:24.) But this portion of the Studio Plaintiffs' Opposition confuses two inquiries—"other activities" and general jurisdiction.

The Court has already considered Nissim's contacts with respect to "other activities" that may be considered in addition to infringement letters directed at the Studio Plaintiffs. The Studio Plaintiffs rely heavily on *Inamed Corp. v. Kuzmak*, 249 F.3d 1356 (Fed. Cir. 2001), where the Federal Circuit held that a district court had personal jurisdiction over a patentee in a declaratory judgment action because the patentee sent an infringement letter to the plaintiff along with other activities. (Opp'n 14:8–15:11.) But that case is clearly distinguishable from the cases here. In *Inamed*, the "other activities" included the negotiation of *exclusive* license agreements *with the plaintiff*. 249 F.3d at 1358–59, 1362. After the license agreements were terminated, the patentee sent an infringement letter to the plaintiff, who then filed a declaratory judgment action. *Id.* Here, the Studio Plaintiffs and Nissim never entered into license agreements on the patents-in-suit, and all of the licenses with other California companies were nonexclusive. Nissim's contacts with California are significantly more attenuated from the Studio Plaintiffs' claims than the "other activities" that related to the claims in *Inamed*.

/ / /

With respect to general jurisdiction, while the Studio Plaintiffs never explicitly argue in favor of general personal jurisdiction, the Court briefly addresses the issue because the Studio Plaintiffs argue that Nissim's "aggregate contacts" are also sufficient for personal jurisdiction. In *Avocent*, the Federal Circuit held that conduct such as "making, using, offering to sell, selling, or importing products" may "in the aggregate justify the exercise of *general* jurisdiction over the patentee" even if those activities "do not establish a basis for *specific* jurisdiction." 552 F.3d at 1336 (emphasis in original). This means that the activities—although unrelated to the enforcement or validity of the patents—may support general jurisdiction if the activities are "continuous and systematic" in the forum state. *See Helicopteros*, 466 U.S. at 415–18.

But this is a high bar and the Court finds that Nissim's contacts with California fail to reach the level of "continuous and systematic." While Nissim did enter into about 20 license agreements with California companies, these agreements were spread out and entered into over the span of two decades. Moreover, the additional conduct discussed above—the litigation of the *Time Warner* Action, the nondisclosure agreements, and CustomPlay's activities—do not aid in the analysis. The nondisclosure agreements with the Studio Plaintiffs were one-offs. Nissim's litigation of the *Time Warner* Action in California was not voluntary, and the litigation of a single case in the forum state does not create general jurisdiction. In addition, the Court has already rejected the imputation of CustomPlay's activities in California to Nissim since the two are separate business entities. Accordingly, the Court finds that Nissim's limited contacts with California do not support a finding of general personal jurisdiction.

## C. Transfer to Southern District of Florida

Having found that the Court lacks personal jurisdiction over Nissim, the Court must next consider whether the action should be dismissed or transferred to the Southern District of Florida. Nissim argued in its Motions for transfer, as opposed to

dismissal, and subsequently withdrew its alternative request to dismiss the actions. Nissim argues that dismissal would be prejudicial because it would alter the availability of certain damages in Nissim's counterclaims. (ECF No. 45.) The Court agrees and finds that transfer to the Southern District of Florida is appropriate and in the interest of justice. *See* 28 U.S.C. § 1406(a).

There is a very real dispute between the parties in these related cases. Dismissal of these cases for lack of personal jurisdiction would require new actions to be filed in an appropriate forum, by which time the damages available to Nissim in its counterclaims would be time-barred. *See* 35 U.S.C. § 286. While the Studio Plaintiffs point to the reasoning in the order transferring the *Time Warner* Action to this district from the Southern District of Florida, the Court finds the circumstances of the instant cases warrant a different result. First, the transferring court in the *Time Warner* Action was not presented with a personal-jurisdiction problem, merely a transfer for convenience under 28 U.S.C. § 1404(a). Nissim was also the plaintiff, having initiated the suit, and not the defendant. Second, the Court is not convinced that litigating these actions in Florida would place a significant burden on any of the litigants, witnesses, or the public. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The Studio Plaintiffs are all large, well-known companies with a worldwide reach. Moreover, the thrust of the evidence in these actions is largely, if not entirely, documentary in nature—i.e., the patents and license agreements—so the Court's concerns about the location of evidence is largely assuaged.

Accordingly, the Court finds that transfer to the Southern District of Florida is in the interest of justice to avoid prejudice to the availability of claims and damages.[7]

/ / /

---

[7] The Studio Plaintiffs suggest that transfer of these cases to the Southern District of Florida would merely waste time and resources because they would simply seek transfer back to the Central District of California on similar grounds as in the *Time Warner* Action. But this argument clearly fails because this Court lacks personal jurisdiction over Nissim, meaning due process prevents the cases from being adjudicated in this forum. These cases are distinguishable from the *Time Warner* Action on a key procedural point—the Studio Plaintiffs initiated suit as opposed to Nissim.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motions to Transfer for Lack of Personal Jurisdiction. (*Paramount* Action, ECF No. 22; *Fox* Action, ECF No. 16; *Universal* Action, ECF No. 23.) These actions are to be transferred to the Southern District of Florida, after which the Clerk of Court shall close these cases.

**IT IS SO ORDERED.**

November 3, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**